UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JENNIFER INGOGLIA and LOUIS INGOGLIA,

Plaintiffs,

-against-

KOHL'S INC., SHARKNINJA OPERATING LLC, JS GLOBAL INC., JS GLOBAL GROUP INC., JS GLOBAL TRADE INC. and SHANGHAI LIHONG ENTERPRISE MANAGEMENT CO., LTD.,

Defendants.

**MEMORANDUM AND ORDER**
Case No. 1:23-cv-03021-FB-RML

*Appearances:*
*For the Plaintiffs:*
JONAH GROSSMAN
187-26 Perth Road
Jamaica, New York 11432

*For the Defendants:*
CHRISTOPHER P. KEENOY
BRIAN P. HEERMANCE
Morrison Mahoney LLP
88 Pine Street, Suite 1900
New York, New York 10005

**BLOCK, Senior District Judge:**

Plaintiff Jennifer Ingoglia alleges she was injured when she fell while vacuuming the carpet in her home using a vacuum designed by SharkNinja Operating LLC ("Shark") and sold to her by Kohl's Inc. ("Kohl's") (collectively

"Defendants").[1] Jennifer asserts claims for negligence, strict products liability, and breach of the implied warranties of merchantability and fitness for a particular purpose, relying on theories of both defective design and failure to warn. Her husband, Louis Ingoglia (with Jennifer, "Plaintiffs"), alleges loss of consortium stemming from Jennifer's injuries. Defendants move to exclude the testimony of Plaintiffs' sole expert, Dr. Donald Coates, and for summary judgment and dismissal of the complaint. For the following reasons, Defendants' motion to exclude Coates's testimony is **GRANTED**. Defendants' motion for summary judgment is **GRANTED** as to the negligence and strict liability claims to the extent they rest on a design-defect theory and **DENIED** in all other respects.

## I. Background

On September 18, 2021, Jennifer Ingoglia was injured while using a Shark Rocket corded stick vacuum (the "vacuum") that she had ordered online from Kohl's in April 2020. *See* Defs.' Rule 56.1 Statement ("Defs.' 56.1") ¶ 2; Decl. of Christopher P. Keenoy ("Keenoy Decl.") Ex. J ("Ingoglia Dep.") at 102, 109-10, 112-13, 122-25. She alleges that the vacuum snagged onto her thick plush carpet,

[1]Plaintiffs' claims against JS Global Inc., JS Global Group Inc., and JS Global Trade Inc. were discontinued by stipulation before removal. *See* Keenoy Decl. Ex. E. The stipulation did not discontinue Plaintiffs' claims against Shanghai Lihong Enterprise Management Co., Ltd., which remains a named defendant but has not appeared. *See id.*; Keenoy Decl. Ex. H (Petition for Removal) ¶ 13.

and that when she pulled back on the vacuum to free it, it suddenly released, causing her to fall backwards and suffer injury. *Id.*

In her Amended Complaint, Jennifer alleges several theories of harm. She claims that the vacuum's nozzle was defectively designed in failing to allow sufficient airflow to minimize the product's suction force. Am. Compl. ¶ 13. The strength of the vacuum's force allegedly led Jennifer to forcefully pull back on the vacuum, and the sudden release that resulted caused her fall. *Id.* She further alleges that the vacuum "failed to provide any warning of this foreseeable occurrence." *Id.* She claims that Defendants breached the implied warranties of merchantability and fitness for a particular purpose. *Id.* ¶ 55. Finally, Jennifer's husband, Louis Ingoglia, claims loss of consortium. *Id.* ¶¶ 58–59.

Plaintiffs commenced this action in New York Supreme Court, Kings County, in March 2022, and Defendants removed it to this Court on the basis of diversity jurisdiction in April 2023. Keenoy Decl. ¶¶ 3, 10. Before the June 28, 2024 deadline for their expert disclosures, Plaintiffs served four reports from their liability expert, Dr. Donald Coates. *Id.* ¶¶ 14–15. On November 6, 2024, Magistrate Judge Levy denied Plaintiffs' request for leave to serve a supplemental report that Coates prepared after visiting Plaintiffs' home in September 2024. *Id.* ¶ 18; Pls.' Decl. in Opp'n ("Pls.' Opp'n Decl.") ¶ 26. Defendants now move to exclude Coates's testimony and for summary judgment. ECF No. 20.

## II. Discussion

A. Defendants' Motion to Preclude Donald Coates's Testimony

The Court first addresses Defendants' motion to exclude the testimony of Plaintiffs' sole expert, Dr. Donald Coates, who opines that the design of the Shark vacuum was defective and that Shark failed to appropriately warn users of the vacuum's dangers.

When a case is removed to federal court by virtue of diversity jurisdiction, as this case was, the Court applies state law to substantive issues and federal law to procedural issues. *Sarkees v. E. I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021). The Second Circuit has made clear that the admissibility of expert testimony is a procedural issue governed by Federal Rule of Evidence 702. *See Campbell ex rel. Campbell v. Metropolitan Property & Casualty Insurance Co.*, 239 F.3d 179, 184 (2d Cir. 2001).

Federal Rule of Evidence 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion

reflects a reliable application of the principles and methods to the facts of the case."

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. *Daubert* identified several factors for courts to consider in assessing whether an expert's testimony is sufficiently reliable. These include: "(1) whether a theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review; (3) the known or potential rate of error and the existence of standards controlling the technique's operation; and (4) whether the theory or technique has gained general acceptance in the relevant scientific community." *Pierre v. Hilton Rose Hall Resort & Spa*, No. 14-CV-3790 (VMS), 2016 WL 1228604, at *3 (E.D.N.Y. Mar. 28, 2016) ("*Pierre I*") (citing *Daubert*, 509 U.S. at 593–94). However, these factors are not a "definitive checklist or test." *Daubert*, 509 U.S. at 593.

Dr. Coates opines that the design of the vacuum at issue was defective in three ways: (1) it lacked a suction reduction valve; (2) it lacked a height adjustment to reduce drag; and (3) it was top heavy. Report of Pl.'s Expert Dr. Donald Coates ("Coates Report") at 7.

Coates further opines that the vacuum should have warned users that the product should not have been used on thick carpets like those in Plaintiffs' home. *Id.*

There are numerous problems with Coates's opinions. Most significantly, Coates did not test the vacuum on Plaintiffs' actual wall-to-wall carpeting before preparing his reports.[2] Keenoy Decl. Ex. Q ("Coates Dep.") at 102:19–23. Although he received a sample of Plaintiffs' carpet, the sample was only approximately five inches by five inches—too small to permit testing with the vacuum nozzle—and he did not include his measurement of the carpet's fiber length in his reports. *Id.* at 103:9-19, 105:3-8. He acknowledged that he had not obtained the same carpeting as Plaintiffs and admitted that he "probably should have looked harder." *Id.* at 107:3-5. Coates himself recognized the limitations of this approach. He testified that his simulation was "not complete because it wasn't wall-to-wall carpet," *id.* at 102:19-23, and that testing the vacuum on Plaintiffs' actual carpeting in their residence would have been a better simulation. *Id.* at 103:4-8. And although his first report warns of the dangers of using the vacuum

[2] Plaintiffs urge the Court to consider a supplemental report from Coates stating that he later visited Plaintiffs' home and confirmed his earlier opinions while there. But Magistrate Judge Levy denied Plaintiffs leave to serve that report after the deadline for expert disclosures, *see* Keenoy Decl. ¶ 18, and Plaintiffs did not object to that ruling, *see* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."). Plaintiffs' request that the Court now consider the report, *see* Pls.' Opp'n Decl. ¶¶ 80–84 & Ex. H2, is therefore denied.

"on high-nap and/or loose wall-to-wall carpeting," he conceded that, before writing his reports, he never observed whether Plaintiffs' carpet was loose or taut. *Id.* at 116:5-21, 117:10-18.

Nor do Coates's opinions have quantitative or objective support. He conceded that ergonomic data concerning the amount of work required to operate the vacuum is numerical, but his reports contain no such analysis. *Id.* at 210:17-211:5. And when asked how anyone could verify or peer review his observational findings without numbers, he answered only that others could do so "[b]y observing the same thing." *Id.* at 209:14-210:13. He likewise acknowledged that airflow and air horsepower are susceptible to numerical calculation, but he performed no such calculations. *Id.* at 219-20. Although Coates opined that the vacuum produced excessive drag, he conceded that drag can be quantified and measured to determine whether it is high, low, or excessive, yet he did not quantify the drag produced during his testing. *Id.* at 225-29. More generally, his reports contain virtually no calculations or measurements from his testing, apart from measurements concerning the vacuum's wheels. *Id.* at 175:24-176:3, 183:24-184:8. Nor did Coates identify any code, statute, safety standard, or industry standard violated by the vacuum. *Id.* at 139, 271-72. Indeed, Coates ultimately acknowledged that he had not performed objective or numerical testing or relied upon an industry standard in reaching his conclusions. *Id.* at 273-74. Asked what

methodology he had used instead, he pointed to his observation that the vacuum sucked down onto a carpet in his home and that "the force was very high—although it was subjective." *Id.* at 273:5–22.

These deficiencies are especially significant because the subjects on which Coates opines—suction, airflow, drag, ergonomic force, and the effect of the vacuum's interaction with particular carpeting—are themselves measurable. Without testing under conditions reasonably comparable to those of the accident, numerical measurements of the forces he characterizes as excessive, or an objective standard against which those measurements could be evaluated, the Court lacks a reliable basis for determining whether Coates's conclusions are "based on sufficient facts or data" or are "the product of reliable principles and methods." Fed. R. Evid. 702(b)–(c).

Plaintiffs respond that Defendants' expert, Joseph Fester, likewise did no quantitative testing of his own. *See* Pls.' Resp. to Defs.' 56.1 ("Pls.' 56.1 Resp.") ¶¶ 28, 36; Keenoy Decl. Ex. S ("Fester Dep.") at 121:2-16. But Fester relied on the numerical results of Shark's pre-production testing under ASTM F1409, a standardized protocol that measures the force needed to push and pull a vacuum across standardized carpets. *See* Fester Dep. 120:22-121:16; Keenoy Decl. Ex. P ("Fester Rep.") at 33-39. Coates's reports, by contrast, contain no measurements of the forces he describes as excessive, Coates Dep. 175:24-176:3, 183:24-184:8, and

no standard against which to judge them, *id.* at 225:24-228:2. More fundamentally, Rule 702 asks whether the proponent has shown that its own expert's opinions are reliable; shortcomings in an adversary's expert do not bear on that question.

Plaintiffs next argue that Defendants' criticisms go to the weight of Coates's testimony, not its admissibility, and should be tested through cross-examination. *See* Pls.' Mem. 5–6. It is true that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but *admissible* evidence." *Daubert*, 509 U.S. at 596 (emphasis added). But that principle presupposes that the proponent has first shown the testimony to be admissible. Whether an expert's opinion rests on sufficient facts or data and reflects a reliable application of reliable methods are threshold questions for the Court, not the jury: Rule 702 requires the proponent to "demonstrate[] to the court that it is more likely than not" that each of those requirements is met. Fed. R. Evid. 702(b)–(d). Thus, while a minor flaw in an expert's reasoning does not warrant exclusion, exclusion is warranted when "the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (internal quotation marks omitted).

The flaws here are of that kind. Coates's opinions rest on two premises: that the vacuum seals itself to carpet like Plaintiffs', and that the resulting forces are

excessive. He never tested the first on Plaintiffs' carpet or on carpet shown to be comparable, and he never measured the second. These are not gaps in an otherwise sound analysis; they are the analysis. What remains is opinion "connected to existing data only by the *ipse dixit* of the expert," which no court is required to admit. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Nor did Coates apply the rigor of his own field. A former director of research at Hoover, he acknowledged that airflow and suction are measured with instruments and that Hoover's standards for judging whether a vacuum's drag was excessive were, "in most cases," numerical. Coates Dep. 219:21–220:21, 226:17–229:2; *see* Pls.' Opp'n Decl. ¶ 74. Rule 702 requires an expert to bring to the courtroom "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Coates did not, and cross-examination cannot cure the problem: a jury cannot weigh measurements that were never taken.

The same deficiencies require exclusion of Coates's opinion that the vacuum should have carried a warning against use on thick carpet. That opinion depends on the premise that the vacuum seizes on carpet like Plaintiffs', and Coates tested that premise only on carpeting and bathmats from his own home—a simulation he conceded was "not complete," Coates Dep. 102:19-23, and would have been better performed on Plaintiffs' actual carpet, *id.* at 103:4-8. An opinion about what a

warning should have said is no more reliable than the untested premise on which it rests.

Because Dr. Coates's opinions lack an adequate foundation for admissible expert testimony, Defendants' motion to exclude his testimony is granted.

B. Defendants' Motion for Summary Judgment

With Dr. Coates's testimony excluded, the Court evaluates Defendants' motion for summary judgment on all claims.

A court may grant summary judgment when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (A dispute as to a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). The movant bears the burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At this stage of the litigation, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (internal citation omitted). When a defendant meets its initial burden for summary judgment, the burden shifts to the nonmoving party to "offer some hard evidence showing that its version of events is not wholly fanciful." *Panora v. Deenora Corp.*, 467 F. Supp. 3d 38, 40-41 (E.D.N.Y. 2020) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

Given that the Court has precluded Plaintiffs' sole expert from testifying, the question is whether Plaintiffs have enough evidence to proceed to trial on any of their claims without expert testimony.[3]

1. Negligence & Strict Liability

"New York courts generally consider strict products liability and negligence claims to be 'functionally synonymous.'" *Cavanagh v. Ford Motor Co.*, 2014 WL 2048571, at *5 (E.D.N.Y. May 19, 2014). "New York Courts have treated the difference between negligence and strict liability as inconsequential." *Id.* (quoting *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 437 n.24 (E.D.N.Y. 2013)); *Lara v. Delta Int'l Machinery Corp.*, 174 F. Supp. 3d 719, 739 (E.D.N.Y. 2016) ("Under New York law, a plaintiff's claim based upon an alleged design defect, sounding in either negligence or strict liability, requires the same prima facie evidentiary showing"). Plaintiffs have asserted claims of design defect and failure to warn sounding in both strict liability and negligence. Given that such claims are

[3]Beyond Coates, Plaintiffs rely on a report by Marcus Allemann, a consultant who examined the vacuum at Plaintiffs' home in December 2021 before withdrawing as their expert, and on consumer reviews posted online. *See* Pls.' Opp'n Decl. ¶¶ 36–44 & Exs. A2, B2. Neither is properly before the Court. Allemann was never disclosed as an expert under Rule 26(a)(2), and his unsworn report is not evidence that can be presented in admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2). Nor may Plaintiffs offer his technical observations by calling him as a lay witness. *See* Fed. R. Evid. 701(c); *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). The online reviews are hearsay when offered, as here, to show that the vacuum behaves as the reviewers describe. *See* Fed. R. Evid. 801(c), 802.

functionally the same, the Court will analyze Plaintiffs' strict liability and negligence claims together.

2. Design Defect

The Court begins by analyzing the design defect claims. Dr. Coates dedicated most of his reports to analyzing the vacuum's defective design, and the Court holds that without his testimony, there is insufficient evidence upon which a reasonable jury could find that the vacuum's design was defective.

"Under New York law, a plaintiff asserting a claim for defective design must show that: (1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 437 (E.D.N.Y. 2013) (quoting *Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 42 (E.D.N.Y. 2010)). "The first two prongs are often referred to as the risk-utility balancing test and are used to determine whether a product is defective or 'unreasonably dangerous.'" *Sorto-Romero v. Delta Int'l Mach. Corp.*, 05 Civ. 5172 (SJF) (AKT), 2007 WL 2816191 at *10 (E.D.N.Y. Sept. 24, 2007) (citing *Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 454 (S.D.N.Y. 1999) & *Cover v. Cohen*, 61 N.Y.2d 261, 266 (1984)). "Critically… this analytical framework requires a plaintiff to prove, via expert testimony, the existence or feasibility of an alternative design which would have prevented the accident."

*Beruashvili v. Hobart Corp.*, 05 Civ. 1646 (ENV) (MDG), 2010 WL 11622750, at *10 (E.D.N.Y. July 15, 2010) (citing *Rypkema v. Time Mfg. Co.*, 263 F. Supp. 2d 687, 691-92 (S.D.N.Y. 2003)); *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 252 (E.D.N.Y. 2014) ("New York law requires plaintiffs to use expert testimony as to the feasibility and efficacy of alternative designs in order to prove a design defect.").

Plaintiffs rely on Jennifer's testimony that the vacuum felt "stiff," had "too much of a grip" and that it suddenly released. *See* Ingoglia Dep. 109-10, 113. They contend that this lay evidence is sufficient to permit the design defect claim to proceed without expert testimony. *See* Pls.' Mem. of Law in Opp'n ("Pls.' Mem.") 6. Indeed, in some circumstances, expert testimony is not required to prove a design defect. "In cases where lay testimony is sufficient to allow a reasonable jury to find that the elements of a product defect have been set forth, courts have allowed plaintiffs to proceed even without any expert testimony." *Castaldi v. Land Rover N. Am., Inc.*, 06 Civ. 1008 (JG) (KAM), 2007 WL 4165283, at *10 (E.D.N.Y. Nov. 21, 2007); *Valente*, 931 F. Supp. 2d at 437 ("A plaintiff is generally required to provide expert testimony in order to establish the feasibility and efficacy of an alternative design, unless 'a reasonable alternative design is both obvious to, and understandable by, a layperson.'" (quoting *Soliman v. Daimler AG*, 10 Civ. 408 (SJF) (AKT), 2011 WL 4594313, at *3 (E.D.N.Y. Sept. 30, 2011)).

However, in such cases, "the relevant defects are 'within the common knowledge of a juror.'" *Pierre v. Hilton Rose Hall Resort & Spa*, No. 14-CV-3790 (VMS), 2016 WL 4742281, at *5 (E.D.N.Y. Sept. 12, 2016) ("*Pierre II*") (quoting *Buckley v. Gen. Motors Corp.*, 98 Civ. 4366 (BSJ), 2004 WL 725933, at *3 (S.D.N.Y. Apr. 2, 2004)).

This is not such a case. A lay person would not necessarily find the alleged defects to be obvious, nor would they be able to sufficiently understand the complexities of vacuum design without expert testimony. While Jennifer's lay testimony is certainly evidence that the incident happened as she describes it, that testimony, standing alone, does not establish the technical propositions necessary for a verdict that the vacuum's design was defective. "New York courts uniformly rule that competent, non-conclusory expert testimony is needed in cases involving more complex [defective] design issues." *Guarascio v. Drake Assocs.*, 582 F. Supp. 2d 459, 463 (S.D.N.Y. 2008) (collecting cases).

Without Dr. Coates's testimony, Plaintiffs have no admissible evidence from which a reasonable jury could find a technologically and economically feasible safer alternative design for the vacuum. Nor does it matter that Shark sells a larger, upright model equipped with a suction-relief valve. *See* Pls.' Opp'n Decl. ¶ 66; Fester Rep. 52-53. Whether such a feature could be incorporated into this lightweight stick vacuum, and whether it would have prevented the sudden release

Jennifer describes without compromising the vacuum's usefulness, are precisely the kinds of questions that require expert testimony. Because New York law requires such evidence, plaintiffs' negligence and strict liability claims are dismissed to the extent they rest on a design-defect theory.

3. Other Claims

Plaintiffs' remaining theories—failure to warn, breach of the implied warranties, and loss of consortium—stand on different footing. None depends on proof of a feasible alternative design, and on this record none requires expert testimony.

Defendants first argue that the failure-to-warn theory is a "phantom" claim that was never pleaded. Not so. The Amended Complaint alleges that the vacuum "failed to provide any warning of this foreseeable occurrence," Am. Compl. ¶ 13, and Plaintiffs' more specific contention that the missing warning concerned use on plush carpet refines that theory rather than adding a new one. Nor can Defendants claim surprise: their own expert and moving papers address Coates's opinion that Shark should have warned against such use. *See* Fester Rep. 22, 46–47; Defs.' Mem. of Law ("Defs.' Mem.") 3–4. Because inadequate warning is a distinct theory of liability under New York law, it does not fall with the design-defect theory. *See Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 236 (1998); *Pierre II*, 2016

WL 4742281, at *14, *23 (allowing failure-to-warn theory to proceed after excluding plaintiff's design expert).

Unlike a design-defect claim, a failure-to-warn claim does not necessarily require expert testimony; a jury may assess the need for, and adequacy of, a warning in light of its own experience. *See Billiar v. Minn. Mining & Mfg. Co.*, 623 F.2d 240, 247 (2d Cir. 1980). Whether an alternative nozzle or valve design would have prevented Jennifer's fall is a question of engineering; whether users should have been told that the vacuum could grip plush carpet and then release suddenly is one a jury can answer from ordinary experience. Thus, "[w]hether warnings were adequate to deter potential misuse and whether the failure to warn was a substantial cause of the injury is ordinarily a question for the jury." *Clarke v. LR Sys.*, 219 F. Supp. 2d 323, 329 (E.D.N.Y. 2002). A court may decide the claim as a matter of law only if the hazard was open and obvious or the plaintiff was already "fully aware of the hazard." *Id.* (quoting *Liriano*, 92 N.Y.2d at 241).

The record contains enough evidence, independent of Coates, to send the claim to a jury. Jennifer testified that the vacuum gripped the carpet with unusual force and then suddenly released, *see* Ingoglia Dep. 109–10, 113; that she read the owner's manual and quick start guide, *id.* at 36–37; and that she "would never have used" the vacuum had she known it could exert such force, *id.* at 125–26. The Owner's Guide cautions that "[s]uction is powerful" and that the vacuum "lifts area

rugs," and Defendants' own expert acknowledged that this caution could be "useful to users who have loose carpeting or higher nap carpeting"; yet none of the Guide's warnings addresses a sudden release. Fester Rep. 44, 46. Defendants point to their expert's testing and to hospital notes stating that Jennifer tripped on, pulled on, or became entangled in the vacuum's cord. *See id.* at 26–28, 39–43; Defs.' 56.1 ¶¶ 9–10. But Jennifer denies those accounts, *see* Ingoglia Dep. 109–10, 160–65, and choosing between them is for the jury.

Nor can the Court say as a matter of law that Jennifer was already "fully aware of the hazard." *Liriano*, 92 N.Y.2d at 241. Although she had felt the vacuum stiffen and release before, *see* Defs.' 56.1 ¶ 8, she testified that those releases were "not in any great way" and that she "never thought that it would thrust me in the manner that it did," Ingoglia Dep. 124:16–21, 125:17–24. A jury could find that an adequate warning would have conveyed the extent of a danger she underestimated. *See Liriano v. Hobart Corp.*, 170 F.3d 264, 270 (2d Cir. 1999). Finally, Defendants do not argue that Shark lacked notice of the hazard, and they raise no argument specific to Kohl's as a retailer, so the Court does not reach those issues.

Defendants argue that Plaintiffs' warranty claims rise and fall with their design-defect claims.[4] They do not. Under New York law, "the causes of action for

---

[4]Plaintiffs' opposition does not separately defend their warranty claims. *See generally* Pls.' Mem. Although the Court may treat a counseled party's failure to defend a claim as abandonment, *see Jackson v. Fed. Express*, 766 F.3d 189, 197–98

strict products liability and breach of implied warranty of merchantability are not identical in New York and . . . the latter is not necessarily subsumed by the former." *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 263 (1995); *accord Ardi v. Miller*, 238 A.D.3d 403 (1st Dep't 2025). A merchantability claim requires no showing of a feasible alternative design; it asks whether the product was fit for its ordinary purpose—that is, whether it was at least "minimally safe for its expected purpose" when used in customary, usual, and reasonably foreseeable ways. *Denny*, 87 N.Y.2d at 258–59; N.Y. U.C.C. § 2-314(2)(c). Cases dismissing warranty claims after excluding a plaintiff's expert are therefore distinguishable where, as here, other evidence shows how the product performed in ordinary use. Jennifer testified that while she was vacuuming the carpet in her loft, the vacuum had "too much of a grip" and then "released where it was holding," causing her to fall. Ingoglia Dep. 109:10–110:2. A jury does not need an expert to decide whether a vacuum advertised for "strong suction and deep cleaning on carpets and floors" is minimally safe if it behaves that way on residential carpet. *See id.* at 40:24–41:2. Defendants' expert testing is contrary evidence for the jury to weigh, not a basis for summary judgment. *See* Fester Rep. 39–43.

---

(2d Cir. 2014), it declines to do so because Defendants' only argument for dismissal is incorrect as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Defendants make no separate argument about the implied warranty of fitness for a particular purpose. The record may well raise questions about whether Jennifer had a "particular purpose" or relied on the seller's skill or judgment, *see* N.Y. U.C.C. § 2-315; Ingoglia Dep. 34:2–13, 39:4–21, but the Court will not grant summary judgment on a ground Defendants did not raise without first giving Plaintiffs notice and an opportunity to respond. *See* Fed. R. Civ. P. 56(f)(2). Finally, because Jennifer's failure-to-warn and warranty theories survive, so does Louis's derivative claim for loss of consortium.

## III. Conclusion

For the reasons above, Defendants' motion to exclude the testimony of Dr. Donald Coates is **GRANTED**. Defendants' motion for summary judgment is **GRANTED** as to Plaintiffs' negligence and strict liability claims (the first and second causes of action) to the extent those claims rest on a design-defect theory, and is otherwise **DENIED**. The case will proceed to trial on Plaintiffs' failure-to-warn and implied-warranty theories and on Louis Ingoglia's derivative claim for loss of consortium.

**SO ORDERED.**

_/S/ Frederic Block__________
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
**October 19, 2026**